UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80051-Cr-Hurley/Vitunac (s)(s)(s)

UNITED STATES OF AMERICA,

Plaintiff,

vs.

JULIEN GARCON,

Defendant.

_____/

FILED by _____ D.C.

[C O ....]

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States
District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions.
Pending before the Court is Defendant's Motion to Suppress Evidence Derived From Two
Search Warrants Lacking Substantial Basis for Probable Cause and From Law
Enforcement's Illegal Search and Seizure (DE 90), filed October 25, 2007. The Government
filed a Response (DE 96) on November 11, 2007. The Court held evidentiary hearings on
November 8, 2007, and November 19, 2007. This matter is now ripe for review.

## DEFENDANT'S WRITTEN MOTION TO SUPPRESS

The Defendant moves this Court to suppress the following: (1) all evidence seized
from 1663 Brandywine Road, Apartment 5213, West Palm Beach ("Apartment 5213") on
December 12, 2005; (2) all evidence seized from a 2003 Audi Sedan on March 22, 2007;
and (3) all evidence seized from 4660 Portofino Way, Apartment 201, West Palm Beach
and Garage Unit ("Portofino Way") on March 22, 2007.

Defendant's first issue involves three alleged searches of Apartment 5213 on

December 12, 2005. Defendant argues that the initial search of Apartment 5213 by the leasing staff was unlawful and provided an insufficient basis for determining probable cause sufficient to issue a search warrant. Defendant further contends that the second search of the apartment by law enforcement, escorted into the apartment by the leasing staff, violates the Fourth Amendment. Lastly, Defendant argues that Judge Lubitz, in violation of the Fourth Amendment, acted as an "adjunct law enforcement officer" and validated an otherwise unconstitutional search, by issuing a search warrant to search Apartment 5213.

Defendant's second issue involves the alleged warrantless search of a 2003 Audi incident to the Defendant's arrest on March 22, 2007. The Defendant argues that the Audi was not described in a search warrant, or lawfully searched incident to arrest since the Defendant had not been seen inside the vehicle, and did not have control over the vehicle prior to his arrest. The Defendant's third issue challenges the constitutionality of the federal search warrant obtained by law enforcement on March 22, 2007, to search the Portofino Way apartment. The Defendant argues that the affidavit underlying the search warrant lacks sufficient probable cause to justify a constitutional search.

## GOVERNMENT'S RESPONSE

The Government maintains that the Court should deny the Defendant's Motion to suppress all evidence seized on December 12, 2005 and March 22, 2007. The Government argues that the Defendant has no standing to contest the search of Apartment 5213 on December 12, 2005. Alternatively, the Government argues that assuming the Defendant did have a legitimate expectation of privacy, those rights were forfeited when the tenant of record provided written notice that she would vacate the apartment on December 8, 2005.

2

The Government argues that the officers who searched Apartment 5213 had an objectively reasonable good-faith belief that the premises had been vacated by the tenant and that they had received valid consent to search from the apartment manager. Next, the Government argues that law enforcement could search the 2003 Audi incident to the arrest of the Defendant. Alternatively, the Government contends that the police could search the Audi pursuant to the automobile exception to the warrant requirement.

The Government argues that the search of the Portofino Way apartment was lawful because it was conducted pursuant to a validly issued search warrant. The Government argues that the Defendant lacks standing to challenge this search warrant. Alternatively, the Government argues that assuming the Defendant has standing to contest the search warrant, the affidavit supporting the search warrant sets forth sufficient probable cause to justify the search. Lastly, the Government argues that even if the affidavit in support of the search warrant did not demonstrate probable cause, the evidence seized by law enforcement should not be suppressed because the agent's reliance on the search warrant was objectively reasonable and they acted in good faith.

## EVIDENTIARY HEARING

### Officer Joseph Rizzo

Officer Joseph Anthony Rizzo is a veteran law enforcement officer with over 14 years experience. Rizzo has been a patrol officer for the City of West Palm Beach Police Department ("WPBPD") for the past ten years, before that he served two years with the Town of Lake Park Police Department and several years as a correction officer. Rizzo testified that on December 12, 2005, he was dispatched as a back up unit, to Apartment 5213, Brandywine Road, West Palm Beach. Rizzo stated that he has responded to over

100 calls involving landlord-tenant issues. Rizzo arrived on the scene and joined the original responding officer Russ Licther. Licther was talking to two white, blond, females, in the stairwell or breezeway of Apartment 5213. Rizzo listened as the females explained to Licther that they had gone into the apartment to "make sure it was vacant because somebody had given them information that they were leaving the apartment." Rizzo stated that listening "to the two young ladies who are managers there . . . would have been sufficient to believe that they had legal access to go and check that apartment."

One lady recounted to the officers that she had observed a firearm in the doorway of the apartment. Rizzo and Licther entered the apartment with the ladies. Rizzo testified that immediately upon entering the apartment he observed a firearm, he also observed "a lot of money" in a plastic bag in a closet in the bedroom, and "other paraphernalia" including "plastic Baggies" and a "white powder residue" which he thought "might be an illegal substance." Rizzo believed Apartment 5213 was a crime scene. Rizzo stated that "[w]hen you have guns a whole bunch of money and you have Baggies and you have white residue everywhere, you - - - you know, my experience leads me to believe that there may be a little bit more to the scenario there." Rizzo stated that he secured the premises and Licther contacted the narcotics unit.

<u>Nicole Stevens</u>

Nicole Stevens testified that she is the assistant manager of the Royal St. George apartment complex in West Palm Beach. Stevens stated that the apartment complex is managed by Lincoln Properties. At all times pertinent to the instant Motion Stevens was a leasing agent at the apartment complex. Stevens stated that her duties as a leasing agent included renting apartments, processing rental applications and lease paperwork, general office duties, and inspecting apartments for damage after a tenant vacates.

4

In her capacity as a leasing agent, Stevens met with a prospective tenant named Shari Morant in March 2005.  Stevens gave Morant a rental application. Morant's application was approved. Morant's lease was entered into evidence (Government Exhibit # 3). Stevens confirmed that Morant was the only tenant and authorized occupant shown on the lease.  The lease was for Apartment 5213, included a garage unit, and set the term of occupancy as starting April 1, 2005 and expiring March 31, 2006. Stevens testified that Morant returned the executed lease with a note.  Stevens read the note into the record:

> I Shari A. Morant give the Royal St. George permission
> to release the keys to apartment # 5213 to my brother on
> March 31, 2005."

(Government Exhibit # 4).  Stevens testified that she released the keys, as instructed by Morant, on March 31, 2005, to an individual purporting to be Morant's brother.[1]  Stevens testified that she never saw Morant again.  Instead, the man who picked up the keys, who Stevens identified as the Defendant, came into the office to pay the rent with a money order which did not reflect a payer's name.

Stevens testified that she saw the Defendant in the apartment complex, either driving his car, or coming and going from his vehicle, but, never saw Morant. Stevens described the Defendant's car as an "older car . . . white, four door and tinted windows." Concerned about the status of the occupants in the apartment, Stevens called Morant to ask if an unauthorized occupant was residing in the apartment. Stevens testified that Morant said that "no one else was living in the apartment."

On November 8, 2005, Morant called Stevens, to inquire if she could move her lease agreement to another rental property in North Florida. Stevens explained to Morant

---

[1]  Steven stated that whoever picked up Morant's keys must have shown her identification before she released the keys.

that the company allowed leases to be transferred between "sister" properties with 30 days written notice. Stevens stated that on November, 8, 2005, Morant, via fax, submitted to the apartment complex her 30-day written notice to vacate (Government Exhibit # 5):

> November 8, 2005
>
> Dear Royal St. George:
>
> I am giving my 30 day notice for address 1663 Brandywine Road Apt. 5213 West Palm Beach, Fl. 33409. I will vacate this unit on December 8th of 2005, and will be transferring my lease to Westlake Apartments of Sanford, Florida.
>
> Sincerely,
>
> Shari A. Morant

Stevens testified that on December 12, 2005, she went to Morant's apartment with assistant manager Nicole Forth, to inspect the condition of the apartment after Morant's move out. Stevens also stated that she did not recall seeing the Defendant at the complex for a few days prior to December 12, 2005, and "thought maybe he had vacated and not turned keys in like a lot of people do." Stevens stated that they were unable to enter the apartment because the locks had been changed. Stevens attempted to contact Morant at every phone number Morant provided, however "[e]verything came back as a wrong number or mailbox was full." Stevens stated that the maintenance man drilled out the locks to allow access to the apartment. The maintenance man then entered the apartment followed by Stevens and Forth. As Stevens entered the apartment she immediately saw a gun in the doorway. Stevens stated that a white powdery substance was also visible in the kitchen area. Stevens called the police.

When the police arrived Stevens gave them a summary of the situation concerning the apartment and the tenant's move out on December 8, 2007. Stevens stated that she

also told the police about the gun and about the white powdered substance which she believed to be cocaine. Stevens testified that she then allowed the police to enter the apartment. Stevens stated that "I brought them to the apartment" and showed them the "things I thought were important for them to see." Stevens testified that she observed in the apartment: a shoe, a bed, and possibly a TV. Stevens stated that it is very common to find furniture and personal items left behind by tenants in a move out inspection.

Agent Joseph Albert Van Reeth Jr.

Agent Van Reeth is a veteran law enforcement officer having served 12 years with the WPBPD. Van Reeth is currently assigned to the Specialized Investigation Division, Organized Crime Section. On December 12, 2005, Van Reeth with Agent Birch responded to a call involving narcotics found in Apartment 5213. At the apartment complex Van Reeth met with Licther and Rizzo, who explained that leasing agents had gone into an apartment they believed was recently vacated by the tenant to inspect the apartment's condition and found cocaine and a gun. This information was confirmed by Van Reeth who received from Stevens a copy of Morant's written notice to vacate before preparing the affidavit and search warrant application for Apartment 5213.

The leasing agent showed Van Reeth and Birch into the apartment with Rizzo and Licther. Van Reeth testified that he was in the apartment briefly and observed a small amount of white powder in a ziplock Baggie, which he believed to be cocaine, and a handgun in a shoebox next to the front door. Van Reeth testified that his conclusion that the white powder substance was cocaine was based not just on his training but on the circumstances attendant to the situation which included the presence of drug paraphernalia including baking soda and razor blades out in the open.

Van Reeth testified that the garage unit leased in conjunction with apartment 5213

7

was not included in the search warrant. Van Reeth stated that a search of the garage was conducted for both civilian and officer safety. Van Reeth stated "the leasing agents want[ed] to make sure there's nothing in there."

Agent Richard A. Birch

Agent Birch is a law enforcement veteran having served 12 years with the WPBPD and two years with the City of Lake Worth Police Department. Birch holds an associate degree in criminal justice from Palm Beach Community College. Birch is currently a narcotics agent in the Special Investigations Division of WPBPD.

Birch testified that he responded to Apartment 5213 on December 12, 2005 with Van Reeth. Birch confirmed Van Reeth's account of the events at the scene. Birch was also the co-affiant on the search warrant affidavit submitted to Judge Lubitz.


Testimony of Agent Birch - Re: March 22, 2007 search of 2003 Audi.

Birch also testified as to the search of the Defendant's Audi, which occurred over a year after the first search of Apartment 5213. Birch stated that on March 22, 2007, he was assigned along with 2 other members of the WPBPD to arrest the Defendant on an active federal arrest warrant. The plan was to arrest the Defendant at the Portofino Way apartment complex in West Palm Beach.[2] Previously, Birch had observed the Defendant (whom he identified in Court) at the Portofino Way apartment complex, driving a black four-door Audi vehicle. Birch knew the Audi was registered in the Defendant's name.

Birch's arrest team set up in an unmarked police vehicle on the west side of the Portofino apartment. Birch spotted the Defendant "on the west side of his building and he

---

[2] It appears the Defendant moved from Apartment 5213 to the Portofino Way apartment complex sometime in November 2006.

8

was walking to the west towards the vehicle. He had a garbage bag in one hand." Birch stated that the Defendant "was walking directly to the black Audi." The black Audi was the only car (other than police) parked in that area. The Defendant was arrested. At the time of arrest the Defendant was approximately 6 feet from the Audi. The Defendant was searched incident to arrest and $495 in currency was found in his pocket along with a cell phone, a car key, and a key which was later determined to be the front door key to Apartment 201, Portofino Way. The bag the Defendant was carrying was inspected after his arrest and found to contain garbage.

Birch testified that Agent Weeks determined that one of the keys opened the Audi. Agent Weeks then moved the Audi and parked it in front of the Defendant's garage door so that it "could be searched on the scene." Birch testified that the search was "an inventory search on scene" authorized by the Drug Enforcement Agency. Birch and Weeks searched the interior compartment of the Audi and Agent Ferrera searched the trunk. Birch testified that he is not familiar with the inventory policies of DEA. Later in his testimony Birch stated that the Audi was seized because it was going to be forfeited. Birch testified that a Social Security card in the name of Julian Garcon was found in the glove compartment, and handcuffs were found in the backseat. In the Audi trunk the officers found some football equipment and "two boxes of 9-millimeter bullets."

When asked "why did you search that Audi" Agent Birch responded "[t]o see what contents were inside the vehicle, see if there were any compartments inside of the vehicle, any hidden compartments, and to find out if there were any narcotics or any contraband inside the vehicle, as well as – I'm sorry. As well as again, it was an inventory search."

On cross-examination Birch stated that he was involved in two days of surveillance on the Defendant and he observed the Defendant make a "heat run" to determine if he was

9

being watched or followed. Birch testified that although the Defendant was arrested carrying a garbage bag, Birch did not look around the parking lot to locate a trash receptacle. Birch stated that he knew that the Defendant purchased the Audi in December 2006. Birch also stated that he had no knowledge that this vehicle [the Audi] could have been used in connection with the first seizure of drugs at Apartment 5213. Birch testified that it was "roughly about 13 months" between the search of the first apartment [Apartment 5213] and the search of the Audi on March 22, 2007.

Birch admitted that he did not know if the Defendant was the last person to have driven the vehicle [the Audi]. Agent Birch also admitted during cross examination that he searched the car because he "believe[d] there to be, yes, contraband in the vehicle." When asked if he believed "there was probable cause to search that vehicle [the Audi]" sufficient to obtain a search warrant, Birch responded "no." Additionally, Birch acknowledged that with the exception of the "heat run" he had no knowledge that the Defendant "was dealing in narcotic[s]. . . at the time when [he] seized the Audi."

## Special Agent James Matthews

Special Agent James Matthews of the Drug Enforcement Agency ("DEA") has 15 years of experience in law enforcement. Matthews received a bachelor's degree in criminal justice from the University of Florida. Matthews was an officer with the University of Florida police department before joining the Gainesville Police Department where he was employed for 9 nine years. Matthews has been employed as a Special Agent with DEA for the last 4 years. Currently he is assigned to the West Palm Beach field office.

On March 21, 2007, Matthews presented an affidavit and complaint to United States Magistrate Judge Ann E. Vitunac charging the Defendant with federal crimes stemming from the December 2005 search at Apartment 5213. Matthews called his supervisor, and

Van Reeth as soon as Judge Vitunac signed the arrest warrant. The Defendant was not arrested that evening. The agents were redeployed the next morning, March 22, 2007, to the Portofino Way apartment to arrest the Defendant. Matthews was not at the scene. Matthews was advised that the Defendant was arrested and Matthews was dispatched to the WPBPD to conduct a post arrest interview with the Defendant. Matthews advised the Defendant of his Miranda rights. The Defendant told Matthews that his address was 2100 North Australian Avenue, West Palm Beach, and that he was employed as a semi-professional football player for a team in Port St. Lucie. Matthews stated that although the Defendant was not on the lease at the Portofino Way apartment he believed the Defendant lived at that location and was "operating a lab" in the apartment.

Matthews testified that he prepared an affidavit and application for a search warrant for the Portofino Way apartment and presented it to United States Magistrate Judge Ann E. Vitunac. Judge Vitunac questioned Matthews concerning the currency found in the Defendant's pocket and the Defendant's employment status. Matthews stated that he told the Judge that the Defendant did not have a verifiable employment history, however, "I did not see as I should have" that football was a "valid form of full time employment." The Judge hand wrote Matthews answers into the search warrant before signing it.

Agent Matthews stated that the decision to seize the 2003 Audi was based on the following factors: the Defendant was seen operating the vehicle on a daily basis, the vehicle was registered in the Defendant's name, and the Defendant had no regular source of income. Matthews stated that "we were curious as to how he could affords [sic] that vehicle." Matthews stated that the Government seized the vehicle for forfeiture because it represented "basically proceeds." Earlier in his testimony, Matthews stated that he was aware of DEA procedures concerning inventory searches. Matthews drove the Audi from

11

the Portofino Apartment to the DEA office in West Palm Beach. Because it had gotten late in the day, Matthews locked the vehicle in the impound lot. Matthews testified that he inventoried the 2003 Audi the next morning.

### Jauxlenait Ghent

Ms. Ghent testified that she is the Defendant's girlfriend, and the mother of his child. Ghent testified that in November 2006, she and her brother moved into an apartment at 4660 Portofino Way. Ghent stated that the Defendant "lived with" her and stayed at the apartment 3 or 4 nights a week. Ghent stated that the Defendant had a key to the apartment, and resided there since "she first lived there - - November 11, 2006."

### Julien Garcon

The Defendant testified that in March 2005 at the request of Shari Morant he went to the Royal St. George to pick up the keys and garage door opener for Apartment 5213. The Defendant testified that he had a deal with Shari that if "I contributed to rent – I could reside there." The Defendant stated that he was residing in the apartment 3 or 4 days a week and on the other days he was staying with his girlfriend. A garage unit was part of the lease and the Defendant stated that he kept a car that he was restoring in the garage.

On cross examination the Defendant admitted that he never told the apartment's management that he was living in the apartment. The money orders used to pay for the apartment were not in the Defendant's name. The Defendant stated that Morant changed her mind about moving to North Florida and decided to stay in Apartment 5213. The Defendant said that Morant asked him to convey this change in move out plans to the apartment's management. The Defendant testified that he conveyed this information to Nicole Stevens.

12

## DISCUSSION

Before the Court are three motions to suppress. The first asks the Court to determine whether the search of Apartment 5213 on December 12, 2005, offends the Fourth Amendment. The second challenges the constitutionality of the warrantless search, of the 2003 Audi on March 22, 2007. Last, the Defendant asks the Court to suppress its own search warrant, issued March 22, 2007, for the search of the Portofino Way apartment.

## SEARCH OF APARTMENT 5213

As a threshold issue, the Court assumes, without finding, for the purpose of this Motion, that the Defendant has standing to contest the search of Apartment 5213.

The Court finds that the entry into Apartment 5213 by the leasing agents and their subsequent action of calling law enforcement and allowing law enforcement access to the apartment does not offend the Fourth Amendment. A search by a private person does not implicate the Fourth Amendment unless the person acts as an instrument or agent of the government. United States v. Ford, 765 F.2d 1088, 1090 (11th Cir. 1985). The Eleventh Circuit test to determine if a private person acted as an agent of the government considers two critical factors: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement rather than to further their own end." U.S. v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).

In the present case, the Court finds that the initial entry into Apartment 5213 was conducted by "private persons" and not by law enforcement or agents of the Government. It is uncontested that the tenant of record for Apartment 5213, Morant, gave the management company written notice of her intent to vacate the apartment on December 8, 2005. It is further uncontested that on December 12, 2005, Nicole Stevens, and Tiffany

13

Forth, private citizens, in the course of their routine apartment management duties, went to inspect Apartment 5213 to assess the apartment's condition after the tenant's move out. The Defendant did not demonstrate that the Government knew of, or acquiesced in, the leasing agents initial entry into Apartment 5213. The Defendant presented no testimony which demonstrated any communication or relationship between the leasing agents and law enforcement prior to their entry into Apartment 5213. Additionally, the leasing agents entered Apartment 5213 for the "private purpose" of "furthering their own end" which was to conduct a routine move-out inspection of the apartment. The leasing agents, after discovering a gun and what appeared to be cocaine in the apartment, called the police.

### Landlord's Consent to Search

A landlord generally lacks common authority to consent to a search of a tenant's apartment. See Chapman v. United States, 365 U.S. 610 (1961). However, a tenant who abandons the property loses any reasonable expectation of privacy he once had. Abel v. United States, 362 U.S. 217, 241, (1960). Although the person asserting a Fourth Amendment right bears the burden of proving a legitimate expectation of privacy in the area searched at the time of the search, the Government bears the burden of proving that the person has abandoned the property in question. United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir. 1994). In a determination of abandonment, "'the critical issue is . . . whether the person prejudiced by the search . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." United States v. Pirolli, 673 F.2d 1200, 1204 (11th Cir. 1982) (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)). Abandonment can be determined "from words, acts, and other objective facts." McKennon, 814 F.2d 1539,1546 (11th Cir. 1987).

14

A third party's consent to search an area is valid if he has mutual use of it, with joint access to or control of the area for most purposes. United States v. Matlock, 415 U.S. 164, 171 n.7 (1974). Even if the consenting party does not, in fact, have the requisite relationship to the premises, there is no Fourth Amendment violation if law enforcement has an objectively reasonable, though mistaken, good-faith belief that the consent obtained was valid to search the area. Illinois v. Rodriguez, 497 U.S. 177, 186 (1990). A search of an allegedly vacated premise by law enforcement, with the consent of the landlord, is valid when the officer has an objectively reasonable good faith belief that the premises had been vacated. U.S. v. Brazel, 102 F.3d 1120,1148 -1149 (11th Cir. 1997).

In the present case, the Government has met its burden and demonstrated that the holder of the leasehold rights for Apartment 5213, Morant, relinquished her interest in the property as of December 8, 2005, and that law enforcement had an objectively reasonable good faith basis upon which to believe that the tenant in fact vacated and the landlord had authority to allow access to the unit. The Court bases its finding on the following.

The tenant of record, Shari Morant, gave written notice of her intent to vacate (Government Exhibit # 5-2) Apartment 5213 on December 8, 2005. The Court did not find the Defendant's testimony concerning Morant's decision not to vacate Apartment 5213 credible. Defendant's testimony that he conveyed Morant's intention to stay in the apartment to Stevens is unsupported by Morant, who did not testify, and Stevens. More importantly, Stevens, a witness the Court found credible, did not testify that the Defendant told her anything about Morant's change of mind. Moreover, the Defendant's testimony is inconsistent with Morant's prior course of conduct with the apartment complex which was to deal with the apartment management in writing.

Similarly, the Court finds no merit in the Defendant's claims regarding his "hold-over

tenant" and "secondary" lease hold rights. The Defendant was not a party to the apartment lease agreement. (Government's Exhibit 3). Though not asked his familial relationship to Morant, Defendant testified that she was "like a sister to him." The tenant of record, when challenged by the apartment management staff absolutely denied that anyone else was living in the apartment. Furthermore, Stevens testified that she did not recall seeing the Defendant for "a couple of days" before the December 12, 2005 entry into the apartment, and "assumed he vacated." The Government successfully demonstrated that the leasehold rights held by Shari Morant in Apartment 5213 were relinquished by her as of December 8, 2005. Therefore, the Court finds that both Morant and the Defendant did not retain a reasonable expectation of privacy with regard to Apartment 5213 on December 12, 2005.

Importantly, the Court finds that the leasing staff gave consent to law enforcement to search the apartment based upon their knowledge that the tenant had vacated the apartment several days earlier. The Defendant argues that because certain personal items were found in the apartment the leasing staff should have known the apartment was not vacated. Stevens' testimony defeats this contention because she stated that every tenant leaves some personal belongings behind.[3] Law enforcement, with the consent of the landlord, had an objectively good faith belief that the premises had been vacated on December 12, 2005. Officer Rizzo and Agent Van Reeth credibly testified to the objective good faith basis they had to believe that Apartment 5213 had been vacated.

_____

[3] Stevens testified about tenant move-outs that "[j]ust you wouldn't believe the things people leave in apartments. All of their clothes, food in the refrigerator, toasters, microwaves, beds, TV, DVD players, Play Stations. I've seen it all."

## Search Warrant for Apartment 5213

The Court finds no merit in Defendant's challenge to the search warrant issued by Judge Susan Lubitz, County Court Judge, Fifteenth Judicial Circuit, on December 12, 2005, for the search of Apartment 5213. The affidavit underlying the search warrant, prepared and sworn to, by Agents Birch and Van Reeth, sets forth in detail the events surrounding Apartment 5213 as detailed in the previous sections of this Report and Recommendation. The affiants describe observing what the leasing agents had found - which includes the handgun, white powder residue and drug paraphernalia. Defendant's argument, that Judge Lubitz was an "adjunct law enforcement officer" and validated an otherwise unconstitutional search, by issuing a search warrant to search Apartment 5213. has no basis in law or fact.

## SEARCH OF THE AUDI

The Defendant argues that the search of the 2003 Audi on March 22, 2007 was unconstitutional because it was not executed pursuant to a search warrant or to any of the "few, well-delineated exceptions" to the exclusionary rule. The Government argues that the Audi was searched as a "contemporaneous incident" of Defendant's arrest and alternatively, that the automobile exception to the exclusionary rule permitted law enforcement to search the Audi. At the evidentiary hearing the Government introduced, as an additional basis for the Audi search, the theory that the Audi was seized by DEA as property subject to forfeiture.

### Search of the Audi Incident to Defendant's Arrest

A warrantless search of the area within an arrestee's immediate control can be conducted contemporaneously with his arrest. See Chimel v. California, 395 U.S. 752

(1969). The Supreme Court, in New York v. Belton, 453 U.S. 454 (1981) addressed the challenges inherent in defining the area of immediate control when a search incident to arrest involves a vehicle. In Belton, the Supreme Court held that incident to a lawful custodial arrest of an occupant of a vehicle, the passenger compartment of the vehicle, and all personal property in the compartment, is subject to a search incident to arrest. Belton, 453 U.S. at 460. In Thornton, the Supreme Court reasoned that in all relevant aspects, "[a] custodial arrest is fluid and t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty." Thornton v. United States, 541 U.S. 615, 621 (2004). Therefore, the Court stated that "the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." Id.

The Supreme Court determined that Belton applies even if the driver gets out of the vehicle before the officer approaches. Thornton, 541 U.S. at 617. The Supreme Court held in Thornton that "Belton allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both "occupants" and "recent occupants" of the vehicle. Thornton, 541 U.S. at 622. "[A]n arrestee's status as a 'recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search, it certainly does not turn on whether he was inside or outside the car at the moment that the officer first initiated contact with him." Id.

In the present case, the search incident to arrest exception to the exclusionary rule of the Fourth Amendment to the Constitution does not apply to the search of the Audi by law enforcement on March 22, 2007 for the following reasons:

It is uncontested that the Audi, registered to the Defendant, was searched in the

parking lot of the Portofino Way apartment complex on March 22, 2007.[4] However, the Government failed to demonstrate that the Defendant was an "occupant" or "recent occupant" of the Audi. Instead, it is uncontested that the Defendant was not an "occupant" of the Audi at the time of his arrest on March 22, 2007. Birch testified that he did not know if the Defendant was the last person to have driven the vehicle [the Audi]. There was no testimony when the Defendant was last seen in the Audi, or that the Defendant was the last person to operate the vehicle, or that the Defendant parked the Audi where it was located in the lot on the morning of his arrest. Agent Birch's testimony places the Defendant about 6 feet from the Audi at the time of his arrest on March 22, 2007 and walking toward the Audi from the apartment. There was no testimony that the Officer feared for his safety. There was no testimony that the car was unlocked or that the car windows were down. It is uncontested that the Defendant was carrying a garbage bag filled with trash. Birch testified that he did not look to see where the trash receptacles were at the arrest scene in relation to the parked Audi. The Court declines to extend the Thornton rule to include a "potential" vehicle occupant. The Government failed to demonstrate a current or recent temporal or spatial relationship between the Defendant and the Audi incident to his arrest sufficient to establish that the Defendant was an occupant or recent occupant of the vehicle. Thornton, 541 U.S. at 622.

Third, assuming arguendo that the Government had been able to demonstrate that the Defendant was an "occupant" or "recent occupant" of the Audi prior to the search by law enforcement, the Belton exception would not apply to the firearm found by Agent Ferrara in the trunk of the vehicle. The Belton exception applies only to "the passenger

---

[4] The Audi was driven from its location in the parking lot at the time of the Defendant's arrest to the front of the garage unit leased with Apartment 5213.

compartment of the vehicle, and all personal property in the compartment." Belton, 453 U.S. at 460. The Court finds that the search incident to arrest exception to the exclusionary rule does not apply to save the constitutionality of the search of the Audi by law enforcement on March 22, 2007.

The Automobile Exception

The automobile exception is one of few exceptions to the exclusionary rule. Under the automobile exception the police are excused from obtaining a search warrant when the vehicle to be searched is readily mobile, and they have probable cause to believe that the vehicle contains contraband. Pennsylvania v. Labron, 518 U.S. 938, 940 (1996); United States v. Watts, 329 F.3d 1282, 1285-1286 (11th Cir. 2003). No special exigency is required beyond a showing of the mobility of the automobile. Maryland v. Dyson, 527 U.S. 465, 467 (1999). The requirement of mobility is satisfied merely if "the automobile is operational." Watts, 329 F.3d at 1286.

The second prong of the automobile exception test, probable cause, is determined under the facts of each case. Id. Probable cause for a search exists when under the totality of the circumstances "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). U.S. v. Lindsey, 482 F.3d 1285 (11th Cir. 2007)(finding that officers had probable cause to search a vehicle under the automobile exception when the vehicle was parked across the street from a bank, prior to conducting the search police officers observed binoculars and what appeared to be a rifle bag through the windows of the SUV, the vehicle was owned by a convicted bank robber, the vehicle had been occupied by three other convicted felons, and the vehicle had been the subject of a prior tip concerning black males loading firearms into an SUV).

20

In the present case, the Government easily satisfies the first prong of the test which requires only that the automobile be operational. To meet the second prong of the test the Government is required to demonstrate that the officers had probable cause to believe that the vehicle contained contraband.

There was no probable cause to search the Audi. The only witness who observed the Defendant driving the Audi at any time was Agent Birch. Birch observed the Defendant make a "heat run" in the vehicle.[5] Birch did not recall exactly when the "heat run" occurred, and speculated that it "probably" occurred about two weeks before the Defendant's arrest. However, a "heat run" standing alone is insufficient to support probable cause. The Government did not demonstrate that the Defendant: (1) was observed transacting drug business from the Audi, (2) was observed or known to transport drugs in the vehicle, (3) was observed or known to store drugs in the vehicle, (4) was observed or known to conduct any other illegal activity from, or with the Audi. Furthermore, the Government failed to connect the Audi to any activities by the Defendant related to the December 12, 2005 search of Apartment 5213. The Defendant demonstrated that he purchased the vehicle in December 2006, one year after the search at Apartment 5213. Stevens testified that the car she saw the Defendant driving at Apartment 5213 was an older model white sedan. This description does not match the Audi.

Agent Birch testified that he did not believe there was probable cause to search the

---

[5]   Birch described the Defendant's "heat run" as follows "[h]e pulled into the complex, drove around circles inside the complex, drove to the side of the complex, got out of his vehicle, stood outside, walked to the front of his vehicle, was looking around as if he was being followed, got back in his vehicle, cut through traffic, and then sped off towards his – back towards his residence."

Audi. Birch acknowledged that with the exception of the heat run[6], he had no knowledge that the Defendant "was dealing in narcotic[s]. . . at the time when [he] seized the Audi." Under the totality of circumstances, the Court finds there was insufficient probable cause to support a fair probability that contraband or evidence of a crime would be found in the Audi. Accordingly, the Court finds that the Government failed to meet the two prong test for the automobile exception to apply to save the warrantless search of the Audi.

### Forfeiture

At the evidentiary hearing the Government introduced, as an additional basis for the Audi search, the theory that the Audi was seized by DEA as property subject to forfeiture. According to the Government's new theory, the search of the Audi was conducted for inventory purposes incident to the seizure. The Government did not plead forfeiture and inventory search as a legal basis for the search of the Audi in its Response (DE 96) to the instant Motion.

The Government argued at the commencement of the evidentiary hearing that it would "rely heavily on its written response." The Government's written response did not contain any suggestion that the Audi was seized on December 12, 2005 because it was "proceeds" and subject to possible forfeiture. This apparent change of course in the Government's argument may have resulted from the testimony (perhaps unexpected) by law enforcement at the evidentiary hearing, that the officers believed they did not have probable cause to search the Audi.[7]

---

[6] Birch did not include his observation of the Defendant's "heat run" in the affidavit underlying the application for a search warrant, for the Portofino Way apartment, submitted to United States Magistrate Judge Ann E. Vitunac on March 22, 2007.

[7] While the officer's view of whether or not he had probable cause to search the car is irrelevant, in this case he was correct.

The Government now argues that the Audi search was justified by DEA seizure of the Audi pursuant to possible forfeiture. However, the Government did not support this theory with any statutory provisions or case law. Importantly, the Government did not argue that DEA was seizing the Audi pursuant to possible civil forfeiture under 21 U.S.C. § 881. Importantly, the Government did not argue or demonstrate a basis in law or fact for civil forfeiture under 21 U.S.C. §881. A civil forfeiture is an in rem action "based upon the unlawful use of the res, irrespective of its owner's culpability." Calero-Toledo v. Pearson Yacht Gearing Co, 416 U.S. 663, 682 (1973). The Government did not demonstrate that the Audi was used or intended to be used to transport, or, in any way facilitate the transportation of a controlled substance, raw material or equipment for producing a controlled substance.

In fact, the Government did not indicate whether the Government was seizing the Audi as "proceeds" pursuant to a specific statutory criminal or civil forfeiture provision. Criminal forfeitures are subject to all the constitutional and statutory procedural safeguards available under criminal law. 21 U.S.C. § 853. Any property derived from, or proceeds, obtained directly or indirectly as a result of the violation of law, to which the Defendant is found guilty are subject to forfeiture. 21 U.S.C. § 953(a)(1). Prior to conviction, and the entry of an order of forfeiture, the Government may move for a warrant of seizure to assure the availability of the property - if there is probable cause to believe that the property to be seized, would in the event of conviction, be subject to forfeiture. 21 U.S.C. §953(f). Here, the Government did not present any argument or testimony in support of a legal or factual basis for criminal forfeiture. Importantly, the Government did not demonstrate that it followed the procedural requirements for criminal forfeiture.

An inventory search of a vehicle is only valid pursuant to a proper seizure.[8] The Government does not allege any factual basis for a lawful seizure of the Audi. The Government did not demonstrate that the Defendant was observed transacting drug business in the Audi, or observed or known to transport drugs in the Audi, or observed or known to store drugs in the Audi. In fact, the Government did not demonstrate that the Defendant was observed or known to conduct any illegal activity from or with the Audi.

Agent Matthews testified that the Audi was seized because "we were curious" as to how the Defendant could afford the vehicle - and because it represented proceeds. "Curiosity" alone is not a sufficient basis upon which the search can be justified. Therefore, the Court dismisses the Government's claim that the search of the Audi was a valid "inventory search" pursuant to a legal seizure for possible forfeiture, as without basis in law or fact.

## Search of the Portofino Way Apartment

As a threshold issue the Court considers the Defendant's standing to contest the search of the Portofino Way apartment on March 22, 2007. The Fourth Amendment protects an individual from unreasonable searches and seizures in those places where he can demonstrate a "legitimate expectation of privacy" against governmental intrusion. Rakas v. Illinois, 439 U.S. 128, 142-43 (1978). The legitimacy of an individual's privacy claim is determined by the totality of the circumstances. Rakas v. Illinois, 439 U.S. at 152.

---

[8] Here, assuming arguendo that a proper seizure of the Audi had occurred, the "on scene" search of the vehicle by Birch, Ferrera and Weeks was by Agent Birch's own admission an investigatory search. Birch (the only agent of the three to testify) stated that he had no knowledge of DEA inventory policy. Birch stated that he searched the Audi "[t]o see what contents were inside the vehicle," and because he "believe[d] there to be, yes, contraband in the vehicle." An inventory search is "not a surrogate for investigation, and the scope of an inventory search may not exceed that necessary to accomplish the ends of the inventory." United States v. Laing, 708 F.2d 1568, 1570 (11th Cir. 1983).

(Powell, J., concurring). To have standing, a defendant bears the burden of showing a legitimate expectation of privacy in the area searched. United States v. Ramos, 12 F.3d 1019, 1023 (11th Cir.1994).

In Brazal, the Eleventh Circuit found that a defendant did not have standing to contest the search of an apartment because he failed to demonstrate that he was either the tenant of the apartment or that he had an unrestricted right of occupancy or control in the apartment at the time of the search. U.S. v. Brazel, 102 F.3d 1120, 1147 -1148 (11th Cir. 1997). Brazel had not leased the apartment nor established by testimony that he resided in the apartment at the time of the search. Id. Similarly, in Baron-Mantilla, the Eleventh Circuit found that a defendant did not have standing to contest the search of an apartment when his mistress did not testify to confirm his residency in the apartment, he did not own or lease the premises, and neighbors or occupants of the complex did not establish that the defendant in fact resided in the apartment. U.S. v. Baron-Mantilla,743 F.2d 868, 870 (11th Cir. 1984).

In the present case, the Court finds that the Defendant had a legitimate expectation of privacy in the Portofino Way apartment and therefore has standing to contest the search. The Court bases this finding on the following factors: (1) the Defendant testified that he lived in the Portofino Way apartment with his girlfriend Ms. Ghent and spent 3 or 4 nights a week in the apartment, and he had a key for the apartment; (2) Ms. Ghent testified that the Defendant is her boyfriend and father of her child, and that he resided with her at the Portofino Way apartment from the time she took occupancy of the apartment on November 11, 2006; (3) law enforcement believed that the Defendant resided at the Portofino Way apartment and Special Agent Matthews testified that although the Defendant gave him another address, he believed the Defendant's true residence

and/or drug lab to be at the Portofino Way apartment; and (4) to arrest the Defendant law enforcement established surveillance on the Portofino Way apartment and watched the Defendant come and go from the apartment. Here, the Defendant's unrestricted right of occupancy or control of the apartment at the time of the search, while not demonstrated by a lease or ownership interest, was established by the totality of the circumstances.

### Search Warrant for Portofino Way[9]

Evidence which constitutes the "fruit of a poisonous tree" is inadmissable to prove a criminal suspect's guilt. Wong Sun v. United States, 371 U.S. 471, 488 (1963). In determining whether evidence is "fruit of the poisonous tree" and, therefore, must be suppressed, the Court's inquiry is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 488; U.S. v. Davis,313 F.3d 1300, 1302 -1303 (11th Cir. 2002).

In the present case, the affidavit, submitted by Special Agent Matthews, on March 22, 2007, in support of the application for a search warrant for the Portofino Way apartment relied upon evidence seized from the 2003 Audi earlier in the day. The affidavit states "[d]uring a search of the Audi Sedan vehicle's trunk area, agents discovered two boxes of 9mm ammunition." The presence of the 9mm ammunition was the only recent illegal contraband or activity cited in the affidavit to support the presence of an illegal drug operation at the Portofino Way apartment.  The affidavit relies heavily upon the December 2005 search of Apartment 5213, and by way of the 9mm ammunition found in the Audi, attempts to provide sufficient probable cause for a search warrant by linking the prior drug

---

[9] The search warrant is identified as case number 07-8123-AEV.

operation to the current Portofino Way location.

This Court finds that the search of the Audi on March 22, 2007, violates the Fourth Amendment and is illegal. Evidence seized as the result of an illegal search may not be used by the Government to justify a subsequent search. Furthermore, the good faith exception "does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search." U.S. v. McGough, 412 F.3d 1232,1239 -1240 (11th Cir. 2005)(quoting United States v. Wanless, 882 F.2d 1459, 1466 (9th Cir. 1989)). Without the 9mm ammunition any probable cause is stale and lacks a nexus to the Portofino Way apartment. Accordingly, the Court finds that the March 22, 2007 search warrant issued for the search of 4660 Portofino Way, Apartment 201 and Garage Unit should be suppressed.

## Recommendation

For the reasons stated above, this Court recommends to the District Court that Defendant's Motion to Suppress Evidence Derived From Two Search Warrants Lacking Substantial Basis for Probable Cause and From Law Enforcement's Illegal Search and Seizure (DE 90), respectively be GRANTED IN PART and DENIED in PART. This Court recommends that Defendant's Motion to suppress the evidence of the search of Apartment 5213 from the search warrant issued by Judge Lubitz be DENIED. This Court recommends that Defendant's Motion to suppress the search of the Audi on March 22, 2007 be GRANTED. This Court recommends that Defendant's Motion to suppress the March 22, 2007 search warrant for 4660 Portofino Way, Apartment 201 be GRANTED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley,

within ten (10) days after being served with a copy.  See  28 U.S.C. § 636(b)(1)(C).

Failure to file timely objections may limit the scope of appellate review of factual findings

contained herein.  See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert.

denied, 460 U.S. 1087 (1983).

     DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District

of Florida, this _____14_____ day of December, 2007.

ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T.K. Hurley
All counsel of record